UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NIELSEN AUDIO, INC.,

      Plaintiff,

v.                                8:15-cv-2435-JDW-AAS

BUBBA CLEM a/k/a BUBBA THE LOVE
SPONGE and BRN NETWORK, INC.

      Defendants.

_____/

### *PLAINTIFF'S OPPOSITION TO DEFENDANT'S*
### *MOTION TO COMPEL AND FOR SANCTIONS*

Plaintiff Nielsen Audio, Inc. ("Plaintiff" or "Nielsen") hereby opposes Defendants Bubba Clem ("Bubba Clem") and BRN Radio Network, Inc.'s ("BRN") (together, "Defendants") Motion Under Fed. R. Civ. P. 37 to Compel Answers to Interrogatories and For Sanctions (the "Motion").

Defendants' Motion makes vague, unsupported, and generalized attacks on the sufficiency of Nielsen's interrogatory responses and objections. Nielsen timely responded to Defendants' interrogatories which are overly broad and seek, in several instances, detailed recitation of "each and every communication" between Nielsen and various third parties such as its subscribers, informants, and anyone complaining about Defendants' tampering with Nielsen's ratings. The main thrust of defendants' motion is their objection to Nielsen's reliance on responses pursuant to Fed. R. Civ. P. 33(d), on documents to be produced which will provide much if not all of the information sought in the interrogatories. Rather than wait for entry of an agreed protective order to protect the confidentiality of the highly sensitive business documents and information they requested, Defendants instead made the instant motion with nothing more

than conclusory arguments, conspicuously devoid of citation to any authority showing that Rule 33(d) is inapplicable here.

Defendants also request sanctions for Nielsen's purported failure to provide sufficient interrogatory responses.  As will be discussed in greater detail below, not only are sanctions inapplicable where, as here, there is a genuine dispute between the parties as to the objections and responses asserted, but Defendants completely ignore the requirement that they first obtain an order compelling discovery and that such order be disobeyed before sanctions may be found to be appropriate. For these reasons, Defendants' Motion should be denied in its entirety.

## *BACKGROUND*

Defendants served their First Set of Interrogatories and First Requests for Production to Nielsen on March 14, 2016.  Nielsen timely served its responses and objections to both discovery requests on April 20, 2016.  Nielsen served its First Set of Interrogatories and First Requests for Production on Defendants on March 15, 2016, and Defendants served their responses and objections on April 20, 2016.

Defendants' counsel and Nielsen's counsel exchanged letters and spoke regarding each other's responses to their respective discovery requests.  Defendants wrote to Nielsen's counsel on April 27 and May 16, 2016, asserting a litany of purported deficiencies in Nielsen's responses and objections, citing to no authority beyond self-serving statements and conjecture.  On June 2, 2016, Nielsen provided a point by point response to each of the items in Defendants' letters.  A copy of that response, as an exhibit to Defendants' Motion, is annexed hereto as Exhibit A. Nielsen's letter not only demonstrated the sufficiency of each its responses and objections, with citation to authority, but also identified the serious deficiencies in Defendants' Responses and Objections to Nielsen's Interrogatories.  To date, defendants have not responded to the issues raised by Nielsen about their own woefully lacking responses.

WPB_ACTIVE 7235460.1

## ARGUMENT

### I.   NIELSEN'S RESPONSES ARE PROPER AND SUFFICIENT

One of the main issues about which Defendants complain is Nielsen's reliance on Fed. R. Civ. P. 33(d) in response to Defendants' Interrogatory Nos. 2, 3, 4, 5, 6, 12, and 17.   Nielsen's reliance on documents which will be produced containing information fully responsive to these interrogatories is a perfectly permissible response under the Federal Rules and is supported by precedent in cases where such responses have been challenged.[1]

#### A.   Nielsen Properly Responded Pursuant to Fed. R. Civ. P. 33(d)

Fed. R. Civ. P. 33(d) provides that, "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party," the responding party may answer by specifying certain records and giving the interrogating party a reasonable opportunity to examine and copy the records. *See Developmental Techs., LLC v. Valmont Indus., Inc.*, No. 8:14-CV-2796-T-35JSS, 2016 WL 1271566, at *3 (M.D. Fla. Mar. 31, 2016).   Rule 33(d) is intended to be used in situations where an interrogatory request makes broad inquiries requiring consultation of numerous documents to ascertain the facts requested.   Moreover, courts in this District have recognized that "Rule 33 is to be liberally construed."   *ParkerVision, Inc. v. Qualcomm Inc.*, No. 3:11-CV-719-J-37TEM, 2013 WL 84926, at *2 (M.D. Fla. Jan. 8, 2013). Because each of Defendant's Interrogatory Nos. 2, 3, 4, 5, 6, 12, and 17 broadly seek "objective facts that are obvious from the specified documents," for which the burden of ascertaining the information is the same for both parties, Nielsen appropriately answered by relying on Rule

---

[1] Nielsen's objections and responses to each of Defendants Interrogatories which will be addressed, in turn, below. Because the issue of whether Nielsen was entitled to respond pursuant to Fed. R. Civ. 33(d) is common to the questions raised by Defendants regarding Nielsen's response to Interrogatory Nos. 2, 3, 4, 5, 6, 12, and 17, this issue will be addressed first.

33(d).  *See, e.g., Morock v. Chautauqua Airlines, Inc.*, No. 8:07-CV-210-T-17-MAP, 2007 WL 4247767, at *2 (M.D. Fla. Dec. 3, 2007).

Defendants' Interrogatory Nos. 2 through 4 ask Nielsen to "describe in detail each and every communication" between Nielsen and its subscriber Beasley Broadcasting Group (No. 2); between Nielsen and another of its subscribers, Cox Media Group (No. 3); and between Nielsen and any other of its subscribers (No. 4) relating to allegations of ratings tampering by Defendants.  Interrogatory No. 6 requests a similar level of detail with respect to complaints Nielsen received from its subscribers questioning the integrity of Nielsen's audience estimates and ratings.  Defendants ask Nielsen to provide, *inter alia*, the dates of such communications, what was said by whom and to whom, the location of said communications and the identity of all persons present.  Nielsen's response, that it would produce documents providing this information, is completely appropriate under the circumstances.

Defendants' Interrogatories 5, 12 and 17 request information that is so far-reaching and requires such a level of detail that the most efficient response is to produce documents. Interrogatory No. 5 requests a detailed account of all consideration paid to Nielsen by Beasley and Cox, all of their affiliates, and every one of Nielsen's subscribers identified in response to Interrogatory No. 4 for the past three years.  Interrogatory No. 12 requests a similar level of detail with respect to statements, notes of interviews of anyone having knowledge of the allegations in the complaint.  Interrogatory 17 requests the details of any investigations conducted by Nielsen since January 1, 2105 "relating to the integrity of the ratings process" including, *inter alia*, the subject, complainant, conduct and outcome of the investigation. Nielsen is entitled to elect to respond to such an interrogatory by reference to documents to be produced.

Defendants' claim that Nielsen is "hiding behind the lack of an agreed protective order" with respect to its discovery responsibilities ignores reality.  The parties submitted an *agreed* motion for entry of an agreed protective order on May 4, 2016, which was denied by the Court on May 10, 2016.  (Dkt. 32).  The parties then consulted with the clerk requesting guidance as to specific items in that proposed protective order the Court believed needed to be addressed, and conferred with one another to resolve those issues.  Despite being well aware that a second agreed upon motion and  revised protective order was about to be filed, and before any exchange of documents began from which Defendants would be able to determine whether Nielsen provided the information requested in the Interrogatories, Defendants' made the instant motion. On June 20, 2016, the parties in fact filed a Second Agreed Motion for Entry of Agreed Protective Order Regarding Confidential Information (Dkt. 41), underscoring both parties' recognition that discovery in this action will involve disclosure of highly sensitive, confidential and proprietary information requiring protection.

The issue concerning entry of an agreed protective order is particularly important in this case given the public nature of this dispute and the parties involved.  Many of the documents Nielsen will be required to produce in response to Defendants' Document Requests and which contain information responsive to Defendants' Interrogatories contain highly sensitive, confidential material.  Defendant Bubba Clem has built his reputation as a "shock-jock" broadcaster on outrageous and inappropriate conduct.  Nielsen cannot risk having its confidential business communications read on air or published on-line or otherwise by Defendants or becoming the fodder for social media chatter by his followers.  The risk to Nielsen of harm to its business relationships and reputation in the industry is real.  Defendants' discovery requests are extremely broad and raise numerous irrelevant issues which have no bearing on whether Defendants did or did not interfere with Nielsen's efforts to gather listening data from its

panelists.  Nielsen has advised Defendants from the outset that it will produce documents once an agreed protective order is in place, but cannot produce documents to Defendants without that protection. It should also be noted that while Defendants criticize Nielsen for supposedly "hid[ing] behind the supposed need for confidentiality" (Motion at 7), they took no action whatsoever to revise the protective order nor have they produced a single document in this action.  For these reasons and those set forth below, Defendants' Motion should be denied as to Interrogatories 2, 3, 4, 5, 6, 12 and 17.

      **B.**     **<u>Nielsen's Responses to the Interrogatory Responses at Issue</u>**

      **<u>Interrogatory No. 2</u>**

Defendants' Motion ignores Nielsen's objection that Interrogatory No. 2, to the extent that it seeks information about communications in which Nielsen supposedly "recommended, requested, or insisted that Beasley discipline one or both defendants for all or any part of the alleged ratings tampering activity that is the subject of this civil action," assumes facts that have not been determined to have occurred.  Moreover, contrary to Defendants' assertion  that "there is nothing vague or ambiguous" about this interrogatory, the use of the terms, "recommended," "requested," "insisted," and "discipline" are in fact vague and ambiguous in this context because they do not provide Nielsen with sufficient specificity or precision to allow it to identify the actions or communications to which the interrogatory is directed.  In any event, Nielsen agreed to produce documents responsive to the interrogatory.  Interrogatory No. 2 asks Nielsen to "describe in detail each and every communication" between Nielsen and Beasley, including "the date(s) of said communication, what was said by whom and to whom, the location of said communication, and the identity of all persons present."  This is precisely the type of interrogatory to which Rule 33(d) applies because it seeks information that can be determined by "examining, auditing, compiling, abstracting, or summarizing a party's business records[.]"  *See*

Fed. R. Civ. P. 33(d); *Reliance Ins. Co. v. Core Carriers, Inc.*, No. 3:06-CV-585-J-20MCR, 2008 WL 2414041, at *3 (M.D. Fla. June 11, 2008) (finding an interrogatory requesting a list of particular details relating to a claim for reimbursement, which are reflected in documents, to be "exactly the kind of interrogatory to which a party may utilize Rule 33(d)").  In addition, despite Defendants' conclusory assertion that the burden of ascertaining the requested information "is much lighter for Nielsen," the burden of reviewing these communications for the requested information will be substantially the same for both parties.  *See Wolk v. Seminole Cty., Florida*, No. 605CV-1722-ORL-18KRS, 2007 WL 328685, at *1 (M.D. Fla. Jan. 31, 2007) (finding reference to Rule 33(d) a proper interrogatory response where party opposing discovery did not offer any evidence that the referenced documents were "voluminous, or any reason to believe that he cannot ascertain the answer to the interrogatories from review of the files as easily as could [the other party]").

Defendants' self-serving contention that "it is hard to imagine that any of the records of Nielsen which describe the communications at issue are protected by trade secret or otherwise worthy of coverage in a confidentiality order because the contents of the communications were shared with Beasley, a nonparty" is simply wrong. Nielsen's communications with its subscribers is not at all a matter of public record.  The fact that Beasley is not a party to this action is irrelevant. Nielsen keeps its private, business communications with its subscribers confidential as a standard business practice and is entitled to maintain that confidentiality in the course of this litigation by producing such records subject to an agreed protective order which it has sought.

Finally, to the extent that Defendants contend that Interrogatory No. 2 seeks detailed information relating to any individual oral communications between Nielsen and Beasley, which are not evidenced by any written record or document and thus, by their nature, exist only as a matter of individual recollection, such information is better suited to deposition testimony, rather

than a written interrogatory response, and should be elicited by deposition. *See Shoen v. Shoen*, 5 F.3d 1289, 1297 (9th Cir. 1993) ("Written interrogatories are rarely, if ever, an adequate substitute for a deposition when the goal is discovery of a witness' recollection of conversations."); *Strode v. Venice, IL*, No. 06-228 GPM, 2007 WL 294263, at *7 (S.D. Ill. Jan. 30, 2007) (concluding that defendants need not respond further to interrogatory seeking the "substance of all communications made by plaintiffs to defendants" . . . because this information was "far better suited for depositions."). As such, Defendants' Motion to compel a further response to Interrogatory No. 2 should be denied.

### *Interrogatory No. 3*

Defendants' use of the term "mentioned or complained" in Interrogatory No. 3 is in fact vague and ambiguous. Defendants do not explain how Nielsen is supposed to determine exactly what communications meet the threshold of *mentioning* or complaining about alleged ratings tampering rise to the level of requiring disclosure in response to this interrogatory. Defendants' request for such a granular level of detail at the mere mention by Cox or any of its affiliates of Defendants' ratings tampering seeks far more information than is relevant to the allegations in the Amended Complaint. As a result, this interrogatory is not relevant or proportional to the needs of the case. In any event, Nielsen responded pursuant to Rule 33(d) that it would produce documents containing information responsive to this interrogatory which is appropriate given that this interrogatory asks Nielsen to "describe in detail each and every communication by Cox Media Group or any affiliate thereof to you," including "the date(s) of said communication, what was said by whom and to whom, the location of said communication, and the identify of all persons present." This information can be ascertained or determined, equally by both parties, from documents evidencing such communications, which Nielsen will produce following entry of an agreed protective order. Defendants have offered no explanation or evidence whatsoever

WPB_ACTIVE 7235460.1

that the burden of identifying this information will not be substantially the same for both parties. *See Wolk*, 2007 WL 328685, at *1.   Moreover, to the extent Interrogatory No. 3 seeks information relating to any oral communications by Cox or affiliates, that are not evidenced by any written record or document and thus, by their nature, exist only as a matter of individual recollection, such information is better suited to deposition testimony, rather than a written interrogatory response, and should be elicited by deposition instead.   *See Shoen*, 5 F.3d at 1297 (9th Cir. 1993); *Strode*, 2007 WL 294263, at *7.   Defendants' Motion to compel a further response to Interrogatory No. 3 should be denied.

### ___*Interrogatory No. 4*___

Nielsen's explanation of its objections to Interrogatory No. 4, as set forth above with respect to Interrogatory Nos. 2 and 3 applies equally here.   Interrogatory No. 4 is even broader however in that it is not limited to Beasley or Cox but seeks detail as to *every* communication with *any* Nielsen subscriber, *without limit* as to geographical market or time.   This interrogatory is simply not relevant or proportional to the needs of the case because it does not purport to limit the scope of the requested information to communications relating to complaints by Nielsen subscribers in the Tampa-St. Petersburg radio market or occurring during the time period relevant to the claims in this action.   Defendants' objection to Nielsen's reliance on Rule 33(d) in its response to Interrogatory No. 4 is misplaced for the reasons set forth above as well.   This interrogatory seeks information that can be ascertained or determined, equally by both parties, from documents evidencing such communications, which Nielsen will produce following entry of an agreed protective order.[2]   To the extent this interrogatory seeks details as to specific conversations not reflected in those documents, that information is more appropriately obtained through deposition testimony, rather than in a written narrative.

---

[2] Although buried as a footnote within Defendants' Motion, the events surrounding the parties' efforts to obtain entry of a protective order are highly significant and for that reason, are detailed by Nielsen above.

WPB_ACTIVE 7235460.1

### *Interrogatory No. 5*

Interrogatory No. 5, which asks Nielsen to "state the total amounts of consideration for ratings subscriptions and related ratings services" paid to Nielsen for the three most recent fiscal years from Beasley Broadcast Group, its affiliates, and Cox Media Group and its affiliates, and any subscribers identified in response to Interrogatory No. 4, is not relevant or proportionate in any way to the needs of the case.  The consideration paid by Cox, its affiliates, and any other subscribers identified by Nielsen bears absolutely no relation to Nielsen's claims for damages. Nielsen alleges in its Amended Complaint that it lost revenue due to the need to de-list Beasley's station WBRN for two months in 2015 as a result of Defendants' ratings tampering.  This does not justify Defendants' request for revenue information from subscribers other than Beasley. Defendants' request is also overly broad with respect to the time period to which it relates as the Amended Complaint alleges panelist tampering by Defendants since May 2014.  Defendants are not entitled to information responsive to this interrogatory going back three years.

Nielsen's response that, pursuant to Rule 33(d), it will produce documents relating to license fees paid to it by Beasley in 2014 pursuant to the terms of the Radio Station License Agreement to Receive and Use Arbitron PPM Data and Estimates, dated September 24, 2014, following entry of an agreed protective order, is entirely proper and sufficient.  Since this can be ascertained equally by both parties, from documents evidencing such license fees, Defendants' Motion to compel a further response to Interrogatory No. 5 should be denied.

### *Interrogatory No. 6*

Without repeating Nielsen's responses to Defendants' arguments with respect to Interrogatory Nos. 2, 3 and 4 at length, those same arguments apply to its response to Interrogatory No. 6 with equal force.  Nielsen's reliance on Rule 33(d) in response to Interrogatory No. 6 is also appropriate, given that this interrogatory asks Nielsen to "describe in

detail each and every so-called complaint" by Nielsen subscribers, including "the date(s) of said complaint(s), the form of the communication (e.g., oral, written or electronic), what was said by whom and to whom, the identity of the custodian of said communication, and the identity of all persons present."  Defendants' Motion to compel a further response to Interrogatory No. 6 should be denied.

### *Interrogatory No. 8*

Despite Defendants' bold assertion to the contrary, Interrogatory No. 8 contains multiple subparts disguised as a single interrogatory.  Interrogatory No. 8 requests an enumeration of monthly dollar amounts expended by Nielsen for separate and distinct "individual categories" of costs, including costs in connection with (1) locating tainted listening data; (2) removing it from the Nielsen audience estimates and re-determining estimates; (3) outside investigation; (4) in-house investigation; and (5) identifying, recruiting, and training replacement panelists.  Given that each of these subparts requires an independent search for information and calculation independent from the other subparts, each of these subparts amounts to a discrete question and should be treated as separate interrogatories.  *See Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.,* No. 3:01CV2198 (PCD), 2003 WL 22326563, at *1 (D. Conn. Mar. 7, 2003).

Nevertheless, Nielsen did respond that its investigation as to these costs is ongoing and Nielsen has not yet been determined the information requested.  Moreover, Defendants have not disclosed the full extent of Defendants' ratings tampering activities, which is likely to remain unknown until discovery has progressed further.  Thus, Nielsen is simply unable to provide any further information requested by this Interrogatory at this time and its response told Defendants' so.[3]  Accordingly, Nielsen's response that it will produce the information requested by

---

[3]      Moreover, Nielsen was not required to allege its ultimate claim for damages in precise detail at the pleading stage.  *See, e.g., St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288-89 (1938) (a plaintiff need not prove the full measure of damages it ultimately seeks at the pleading stage).

Interrogatory No. 8 when its investigation as to this issue is complete, by amending and supplementing its responses and/or by producing responsive documents containing such information, is proper and sufficient at this time.

Defendants' accusation that Nielsen is withholding information responsive to this interrogatory in an effort to harass, delay or needlessly increase the cost of this litigation (Motion, at 11) is completely unwarranted and extreme.  Defendants simply misrepresent the length of time they have purportedly been waiting for this information as well; they requested it in March, 2016 for the first time, not since the action was commenced.   As noted above, Nielsen cannot produce information that is incomplete and that it does not yet have and should not be sanctioned for responding accordingly.   For this reason, Defendants' Motion to compel and for sanctions with respect to Nielsen's Response to Interrogatory No. 8 should be denied.

### *Interrogatory No. 12*

Defendants' claim that Nielsen's objection to Interrogatory No. 12 is invalid is, once again, simply wrong. Nielsen's objection was expressly stated as being "to the extent" that the request for the information sought in this interrogatory is governed by the Case Management and Scheduling Order, in which case, disclosure would be made in accordance with the Court's order.  Nielsen responded pursuant to Rule 33(d) that it will produce documents that will provide the requested information.  As with Interrogatory Nos. 2, 3, 4, 5, and 6 above, Nielsen's reliance on Rule 33(d) in response to Interrogatory No. 12 is entirely appropriate, given that this interrogatory asks Nielsen to provide a list of the "recordings or writings" with respect to any interviews conducted, including identifying "the person(s) interviewed, the person(s) and/or organization that conducted the interview, the date of such interview(s), the nature of the recording or writing generated, and the person having custody of the recording or writing."  Moreover, the interrogatory is not limited to the facts alleged in the Amended Complaint but

asks for any such information "pertaining to . . . the defenses raised."  Defendants asserted 15 affirmative defenses raising a host of issues which, in Nielsen's view, are unrelated to the allegations of ratings tampering by the Defendants.[4]  This information can be ascertained from documents that Nielsen will produce following entry of an agreed protective order.  As such, Defendants' Motion to compel a further response to Interrogatory No. 12 should be denied.

### *Interrogatory No. 17*

 Interrogatory 17 is extremely broad and vague, particularly with respect to the meaning of the term "relating to the integrity of the ratings process."  Defendants chose to draft this interrogatory in such a broad and overly inclusive manner yet, when Nielsen properly objected to it, now complain that "Nielsen's response appears to be no response at all."  Had Defendants drafted this interrogatory more narrowly, in a manner that provided sufficient specificity to allow Nielsen to identify what documents or information are in fact responsive, Nielsen would have been able to respond differently, perhaps avoiding a dispute.  Despite Defendants' vague wording, Nielsen offered to produce documents relating to the only allegations of ratings tampering at issue in this case, *i. e.* those of the Defendants.  Accordingly, Defendants' Motion to compel a further response to Interrogatory No. 17 should be denied as well.

### *Verification*

Defendants' attack the sufficiency of the verification by its corporate representative, Matthew O'Grady, in an attempt to manufacture controversy where none should exist.  Their contention that the verification executed by Mr. O'Grady is "not acceptable," is entirely meritless.  As federal courts have explained, Federal Rule of Civil Procedure 33(b), which requires that interrogatory answers be verified under oath, simply requires that the corporate representative provide "a verification stating that ***to the best of his or her knowledge,***

---

[4] Nielsen moved to strike 11 of Defendants' 15 affirmative defenses (Dkt. 28). That motion was pending at the time these interrogatories were served and at the time Nielsen responded. The Court struck four of the defenses.

*information, and belief*, the answers provided are true and correct." *State Farm Mut. Auto. Ins. Co. v. New Horizon, Inc.*, 250 F.R.D. 203, 221 (E.D. Pa. 2008) (emphasis added); *see Shepherd v. American Broadcasting Cos., Inc.,* 62 F.3d 1469, 1482 (D.C. Cir. 1995) (noting that "a representative of a corporate party [may] verify the corporation's answers [to interrogatories] without personal knowledge of every response by 'furnish[ing] such information as is available to the party'"). This is precisely what Mr. O'Grady's verification accomplished. 28 U.S.C. § 1746 does not require the incantation of the specific words cited by Defendants as absent from Nielsen's verification. That section expressly provides that a verification be subscribed by the declarant in "*substantially*" the form set forth in that rule, not exactly in that form. However, to avoid a needless dispute, Nielsen agreed to provide and has provided Defendants with a revised verification, signed by Mr. O'Grady under penalty of perjury and attesting that the responses are true and correct. A copy of that verification is annexed as Exhibit B.

The issue here concerning Nielsen's verification of its responses does not rise anywhere close to the level of misconduct that would justify sanctions of any kind. For example, in *State Farm Mut. Auto. Ins. Co. v. Lincow*, No. 05-5368, 2008 WL 697252 (E.D. Pa. Mar. 10, 2008), the plaintiff repeatedly requested that defendants properly verify their discovery responses, where defendants submitted responses verified by only one of several defendants. *Id.* at *5. Sanctions were awarded but only after Defendants failed to submit verifications by all defendants, without justification, despite three motion to compel and two orders of the court. *Id.* at *6. *See also*, *Volvo Const. Equip. Rents, Inc. v. NRL Texas Rentals, LLC*, No. 2:09-CV-00032-JCM, 2011 WL 6140515 *7 (D. Nev. Dec. 9, 2011) (motion to strike interrogatory responses and for sanctions denied as moot where failure to provide verification for several months was explained by confusion caused by withdrawal of counsel and where signed verifications were ultimately obtained, the court noting that "the verifications did exist, and were

not created or falsified after the fact, and that their late production has not had any impact on the litigation.").

Despite Defendants' wild and baseless speculation to the contrary, there was never any deceptive intent or "ultimate edge" intended by Nielsen.  Defendants have not shown and cannot show that the delay in getting a revised verification has had any impact whatsoever on this litigation.  For all these reasons and because the issue concerning the verification is now moot, Defendants' request for the extreme remedy of sanctions should be denied.

## II.   *DEFENDANTS' REQUEST FOR SANCTIONS SHOULD BE DENIED*

### A.   *Nielsen's Interrogatory Objections and Responses do not Warrant Sanctions*

Although not delineated as a separate request in its motion, and couched in a rambling recitation of portions of Rule 37 and the Advisory Comments to that rule, Defendants' appear to seek sanctions against Nielsen based on Nielsen's objections to Defendants' interrogatories, Nielsen's supposed hiding behind the lack of an agreed protective order as a reason documents have not yet been produced, and the purportedly insufficient verification of Nielsen's interrogatory responses. None of this justifies an award of sanctions.

Fed. R. Civ. P. 37(a)(5) permits a Court to order the opposing party to pay a prevailing movant's reasonable expenses in making the motion to compel, unless the movant filed the motion before attempting in good faith to obtain disclosure or discovery without court action; the opposing party's nondisclosure, response, or objection was substantially justified; or other circumstances make an award of expenses unjust.  The substantial justification exception under Rule 37(a)(5) is "satisfied if there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Kamps v. Fried, Frank, Harris, Shriver & Jacobson L.L.P.*, 274 F.R.D. 115, 118 (S.D.N.Y. 2011) (citing *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)).  Substantial justification can include making meritorious objections to

requested discovery. *Kemp v. Harris*, 263 F.R.D. 293, 296-97 (D. Md. 2009) (citing *Vollert v. Summa Corp.,* 389 F. Supp. 1348, 1352 (D. Haw. 1975)). *See also*, *Prato v. Hacienda Del Mar, LLC*, No. 2:08-CV-883FTM-29SPC, 2010 WL 1544353 (M.D. Fla. Apr. 19, 2010) (request for sanctions and attorneys' fees denied where defendant failed to respond to interrogatories and document requests and court granted motion to compel responses, on the grounds that the "fact that the Parties have been negotiating over the deadline to produce is a strong indicator that the parties have been discussing and working through the issues involved.").

Defendants are not entitled to an award of sanctions because Nielsen responded to Defendants' interrogatories in a timely manner and asserted objections that were substantially justified. Nielsen demonstrated that its objections and responses, particularly its reliance on Rule 33(d), as set forth above, were proper and warranted, but at the very least, there is a genuine dispute as to the propriety of these responses and objections. The specific examples of purported misconduct Defendants cite are either misleading or do not rise to anywhere near the level justifying an award of sanctions. For example, Defendants mischaracterize Nielsen's attempt to have a meaningful discussion of ESI search terms and procedures as Nielsen "demand[ing] search terms from the Defendant as a condition of completing its search for electronically stored documents." Motion, at 17. After several attempts to get Defendants to provide search terms, for the express purpose of *avoiding* discovery disputes, Defendants provided an extremely broad and unrealistic list of search terms that even they characterize as "copious." Rather than multiply the areas of dispute, Nielsen has been attempting to collect the information requested to the extent possible given these vague and expansive terms.

Defendants next again accuse Nielsen of hiding behind the lack of an agreed protective order as a basis on which to award sanctions. As noted above, Nielsen is not hiding behind anything; there is a real and valid possibility of irreparable harm to Nielsen's business

relationships if it produces highly sensitive and confidential documents to an on air radio personality such as Bubba Clem.   Moreover, Defendants themselves have not produced any documents to Nielsen.  Defendants' argument that they are entitled to relief because they moved to compel before there was any pending motion for protective order is also disingenuous and obvious gamesmanship.   Counsel for Nielsen had been in touch with Defendants several times by phone and email after the initial agreed upon motion was denied, in an effort to work together on a revised protective order.   (*See, e.g.,* emails annexed as Exhibits C through F).   On the very same day Nielsen provided Defendants with a final version of the proposed revised order and Nielsen requested Defendants' consent to file that day, Defendants' counsel Warren Zimmerman sent a cryptic email (annexed as Exhibit G) which avoided giving consent, filed the instant motion a short time later, and then left town.   Nielsen then promptly followed up with Mr. Zimmerman's associate, obtained Defendants' consent, and filed the agreed upon motion (Dkt 41).  Had Defendants' counsel simply cooperated with Nielsen's counsel and worked on a revised protective order, much of the present dispute could have been avoided.

### B.       _Defendants Have Not Met the Requirements Necessary to Obtain Sanctions_

Courts in the Eleventh Circuit require a two-step process be followed before awarding discovery sanctions.  "A party first obtains an order compelling discovery under Rule 37(a); if the other side fails to comply with that order, the party then moves for sanctions under Rule 37(b) for the other side's failure to comply with the court's order."  *Bruggemann v. Amacore Grp., Inc.*, No. 8:09-CV-2562-T-30MAP, 2011 WL 1899251, at *3 (M.D. Fla. Apr. 1, 2011) (citing *United States v. Certain Real Property*, 126 F.3d 1314, 1316–18 (11th Cir. 1997)); *see also, Kendall Lakes Towers Condo. Ass'n, Inc. v. Pac. Ins*. Co., No. 10-24310-CIV, 2011 WL 6190160, at *6 n.3 (S.D. Fla. Dec. 2, 2011) ("Rule 37 does not permit sanctions for failing to adequately respond to interrogatories absent a court order requiring better answers.").   Here,

Defendants are not entitled to sanctions because they have not met even the first of these two steps as they have not yet obtained an order compelling further responses from Nielsen.

## *CONCLUSION*

For all of the foregoing reasons, Defendants' Motion to Compel and for Sanctions should be denied in its entirely, and Nielsen's Cross-Motion to Compel should be granted.

## *CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that on July 5, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and furnished a copy electronically via the Court's CM/ECF system to Todd Foster, Esq. and Warren Zimmerman, Esq., Todd Foster Law Group, 1881 W. Kennedy Blvd, Tampa, FL 33606-1606 at tfoster@tfosterlaw.com and wzimmerman@tfosterlaw.com and Lawrence C. Drucker, Esq. and Alfred R. Fabricant, Esq. of Brown Rudnick LLP, 7 Times Square, New York, NY 10036 at ldrucker@brownrudnick.com and afabricant@brownrudnick.com.

/s/ Mark J. Ragusa
Mark J. Ragusa, Esq.
Florida Bar No.: 0829633
GUNSTER, YOAKLEY & STEWART, P.A.
401 E. Jackson Street, Suite 2500
Tampa, FL 33602
(813) 222-6619; Fax: (813) 228-6739
E-mail: mragusa@gungster.com


Alfred R. Fabricant (pro hac vice)
Lawrence C. Drucker (pro hac vice)
BROWN RUDNICK LLP
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800; Fax (212) 209-4801
E-mail: afabricant@brownrudnick.com
          ldrucker@brownrudnick.com

*Trial Attorneys for Plaintiff, Nielsen Audio, Inc.*