# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

NIELSEN AUDIO, INC.,

    Plaintiff/Counterclaim Defendant,

vs.                                                            Case No. 8:15-cv-02435-T-27AAS

BUBBA CLEM, a/k/a Bubba The Love Sponge,
and BUBBA RADIO NETWORK, INC.,

    Defendants/Counterclaimants.
_____/

## ORDER

**BEFORE THE COURT** is Plaintiff's Motion to Dismiss Defendants' Counterclaim (Dkt. 111) and Defendants' response (Dkt. 114). Upon consideration, the motion is **DENIED**.

## Background

Bubba Clem is a radio personality in the Tampa area whose show is owned and produced by Bubba Radio Network, Inc. ("BRN") and broadcasted by non-party Beasley Broadcast Group, Inc. ("Beasley"). (Counterclaim, Dkt. 108 ¶ 2, 5). Nielsen Audio, Inc. ("Nielsen") is the only company that provides radio audience measurement and ratings services in the Tampa area. (*Id.* ¶ 10). In their Counterclaim, Defendants allege that Nielsen used its monopoly power to manipulate ratings and damage its relationship with Beasley, as well as their business relationships with several advertisers. (*Id.* ¶ 27-59, 75).

Defendants assert claims against Nielsen for tortious interference with contractual and business relationships, violations of Florida's Deceptive and Unfair Trade Practices Act

1

("FDUTPA"), and civil conspiracy. Nielsen moves to dismiss the Counterclaim as a shotgun pleading and for failure to state a claim. (Dkt. 111).

## Standard

A counterclaim should contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On review of a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, the court must accept all factual allegations in the complaint as true, but this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must "state[ ] a plausible claim for relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

On a motion to dismiss, a court is generally limited to reviewing what is within "the four corners of the complaint." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). All reasonable inferences must be drawn in the plaintiff's favor. *Id.* "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citation and internal quotations omitted).

## Discussion

### Shotgun Pleading

Nielsen moves to dismiss the entire Counterclaim as an impermissible shotgun pleading. Shotgun pleadings make it "virtually impossible to know which allegations of fact [were] intended to support which claim(s) for relief." *Anderson v. Dist. Bd. Of Trs. Of Cent. Fla. Cmty. Coll.*, 77 F.3d

2

364, 366 (11th Cir. 1996). If a pleading fails "to give defendants adequate notice of the claims against them and of the grounds upon which each claim rests," the pleading violates the "shotgun pleading" rule. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). *Weiland* identifies four categories of shotgun pleadings, none of which apply to the Counterclaim. *Id.* at 1321-23.

A shotgun pleading does "not [separate] into a different count each cause of action or claim for relief." *Id.* at 1323. Here, however, the Counterclaim separates each cause of action into four counts and incorporates only the relevant factual allegations. (Dkt. 108 ¶¶ 63-72, 73-83, 84-90, 91-95).

Another example of a shotgun pleading is one which "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323. There can be no confusion here, since the Counterclaim asserts actions only against Nielsen. Further, Defendants attributes specific actions relating to the conspiracy and tortious interference to Nielsen. For example, Defendants allege Nielsen de-installed "households . . . whose listening habits showed a preference for Clem," (Dkt. 108 ¶ 29), and selected and paid a planted panelist to frame Clem for ratings distortion activity (Dkt. 108 ¶¶ 34-35). Further, they allege that Nielsen de-listed Beasley as a sanction (Dkt. 108 ¶ 43), and published its decision to do so in a "Product Notification to [Nielsen's] subscribers."(Dkt. 108 ¶¶ 48-50).

Another category of a shotgun pleading "incorporat[es] . . . preceding paragraphs where a complaint 'contains several counts, each one incorporating by reference the allegations of its predecessors . . . , leading to a situation where [all but the first count] contain irrelevant factual

3

allegations and legal conclusions." *Weiland*, 792 F.3d at 1321 (quoting *Strategic Income Fund, L.L.C. v. Spear Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002)). But that is not the case here. Counts I through III do not incorporate any allegations from the preceding counts, but rather incorporate the general allegations. And Count IV justifiably incorporates all preceding paragraphs as the alleged conspiracy included tortious interference and deceptive and unfair trade practices.

The last category of shotgun pleading is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322. Nielsen argues that Defendants have unnecessarily included allegations only for the purpose of casting doubt on Nielsen's reputation and reliability. (Dkt. 111 pp. 5-6). Notwithstanding, drawing all reasonable inference in Defendants' favor, those allegations are not so unrelated to their claims as to be considered immaterial.

In sum, these allegations in the Counterclaim do not make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Within its four corners, the Counterclaim puts Nielsen on sufficient notice of the allegations against it. *Id.* at 1325 (citing *Anderson*, 77 F.3d at 366). Accordingly, the Counterclaim is not a shotgun pleading.

### Pleading Fraud with Particularity Under Fed. R. Civ. P. 9(b)

Nielsen argues that Defendants' tortious interference claim in Count I is based on fraud and therefore must meet the particularized pleading standard of Fed. R. Civ. P. 9(b). (Dkt. 111 at p. 7). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). I disagree. Defendants allege that Nielsen put "pressure on Beasley to terminate it relationship with Clem and BRN." (Dkt. 108 ¶ 56). The particularized

4

pleading standard under Rule 9(b) therefore does not apply.

**Tortious Interference with Contractual and Business Relationships (Counts I & II)**

Nielsen moves to dismiss Counts I and II for failure to state a claim. A tortious interference claim requires a plaintiff to allege "(1) the existence of [a contractual or] an advantageous business relationship under which the plaintiff has legal rights, (2) an intentional and unjustified interference with the relationship [by the defendant], and (3) damage to the plaintiff as a result of the defendant's actions." *See Wackenhut Corp. v. Maimone*, 389 So. 2d 656, 657 (Fla. 4th Dist. Ct. App. 1980). When alleging that a defendant has interfered with a business relationship, that relationship must be "with an identifiable [entity]" rather than "with the public at large." *Ferguson Transp., Inc. v. North American Van Lines, Inc.*, 687 So.2d 821, 822 (Fla. 1996).

In Count I, Defendants identify Beasley as the contractual relationship with which Nielsen interfered. After Cox opted not to renew its contract with Defendants, they signed a contract with Beasley. (Dkt. 108 ¶ 14-15, Exhibit A). Once Nielsen began to feel pressured by Cox to neutralize them as competition, Nielsen did not publish Beasley's listener statistics for two months in a row and published negative feedback on Beasley in its Ebook, leading to a decline in business for Beasley. (Dkt. 108 ¶ 48, 57). Beasley cited Nielsen's actions as part of the reason it eventually terminated its contract with Defendants. (Dkt. 108 ¶ 59, 69).

In Count II, Defendants identify McDonalds and Omaha Steaks as business relationships with which Nielsen intentionally and unjustifiably interfered. (Dkt. 108 ¶ 75). Due to Nielsen's public exposition of their alleged manipulation of listener statistics, Defendants cannot compete, advertisers no longer want to conduct business with them, and they have not been able to secure a new syndication agreement since their contract with beasley was terminated. (Dkt. 108 ¶ 52-53).

5

Defendants allege that their relationships with Beasley and its advertisers have been damaged as a result of Nielsen's interference. (Dkt. 108 ¶ 80). Accordingly, Counts I and II sufficiently pled each element for a prima facie case for tortious interference. And for Nielsen's argument that there is no basis for injunctive relief under the tortious interference claims, whether Defendants are entitled to injunctive relief is immaterial to the legal sufficiency of their claims. A well-pleaded complaint is all that is required to survive a motion to dismiss, even if "recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

### FDUTPA (Count III)

Nielsen moves to dismiss Defendants' Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") claim for failure to state a claim. To plead a claim under FDUTPA, these elements must be met: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d Dist. Ct. App. 2006) (citing *Chicken Unlimited, Inc. v. Bockover*, 374 So.2d 96, 97 (Fla. 2d Dist. Ct. App. 1979)).

In the context of these elements, "an unfair practice is 'one that "offends established public policy" and one that is "immoral, unethical . . . , or substantially injurious to consumers." ' " *Id.* (quoting *Samuels v. King Motor Co. Of Ft. Lauderdale*, 782 So.2d 489, 499 (Fla. 4th Dist. Ct. App. 2001)). A deceptive act is one that "would likely 'mislead the [objective] consumer acting reasonably in the circumstances.'" *Democratic Republic of the Congo v. Air Capital Group, LLC*, 614 Fed. Appx. 460, 470 (11th Cir. 2015) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003) (brackets original)).

Defendants allege that Nielsen improperly included data of misassigned panelists and tampered ratings in its June 2015 report but failed to reissue an accurate report. (Dkt. 108 ¶ 23-25,

42). Because Defendants allege that Nielsen retains a monopoly over this information, its actions could have mislead objective customers and amaged Defendants. Defendants have therefore sufficiently plead a claim under FDUTPA.

Nielsen's argument Defendants cannot obtain injunctive relief under FDUTPA does not go to the sufficiency of the claim. A enforcing authority may "bring . . . an action to enjoin any person who has violated, is violating, or is otherwise likely to violate" the FDUTPA. Fla. Stat. §501.207. As noted, a claim is well-pleaded and may survive a motion to dismiss even if "recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

### Civil Conspiracy (Count IV)

Finally, Nielsen motions to dismiss the civil conspiracy claim. The elements of such a claim in Florida are: "'(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to [the] plaintiff as a result of the acts performed pursuant to the conspiracy.'" *Olson v. Johnson*, 961 So.2d (Fla. 2nd Dist. Ct. App. 2007) (citing *Walters v. Blankenship*, 931 So.2d 137, 140 (Fla. 5th Dist. Ct. App. 2006)) (brackets original). "An actionable [civil] conspiracy requires an actionable underlying tort . . ." or there exists "peculiar power of coercion possessed by the conspirators by virtue of their combination." *Walters*, 931 So.2d at 140 (citations and internal quotations omitted).

Defendants rely on Nielsen and Cox's tortious interference and unfair and deceptive trade practices. They allege that Nielsen partnered with Cox to conduct a "sting operation" to manipulate listener statistics and blame Defendants. (Dkt. 108 ¶ 33-40). They also allege that Nielsen gave preferential treatment to Cox while following Cox's orders to exert pressure on Beasley to fire

Defendants by de-listing Beasley from its reports. (Dkt. 108 ¶¶ 43, 51). Further, they allege that Nielsen de-listed Nielsen for September and October of 2015 (Dkt. 108 ¶¶ 43, 51), and published this decision in a notification to its subscribers. (Dkt. 108 ¶¶ 48-50).

These allegations support the "who," "when," and "what" that Nielsen claims are missing from this claim. (Dkt. 111 at 11). The civil conspiracy claim is therefore supported by the allegations of underlying torts and is sufficient as it is.

### Conclusion

Counterclaim-Defendant's Motion to Dismiss the Counterclaim-Plaintiffs' Counterclaim for Failure to State a Claim Upon Which Relief Can Be Granted (Dkt. 111) is therefore **DENIED**. Nielsen shall answer the counterclaim within **15 days** of the date of this order.

**DONE AND ORDERED** this 7th day of August, 2017.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record